## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JAMISHA ROSEBAR et al., individually and on behalf of others similarly situated, | ) ) ) ) |
| *Plaintiffs*, | ) ) No. 18 C 7081 |
| v. | ) ) Judge Virginia M. Kendall |
| CSWS, LLC d/b/a OCEAN'S GENTLEMEN'S CLUB, DEBORAH DIAZ, and SEIF EL SHARIF, | ) ) ) ) |
| *Defendants*. | ) ) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Jamisha Rosebar, Breona Smith, Kenya Williams-Mix, Adrieana Powell, Shalayla Liddell, Jada Adams, Princess Wellington, and Laqueshia Miller (collectively, "the Plaintiffs"), on behalf of themselves and others similarly situated, brought this class and collective action against CSWS, LLC d/b/a Ocean Gentlemen's Club, Deborah Diaz, and Seif El Sharif (collectively, "the Defendants") for failing to pay the plaintiffs any minimum or overtime wages for their services as dancers. The plaintiffs assert claims against the defendants under the Fair Labor Standards Act (FLSA) (Count I), the Illinois Minimum Wage Law (IMWL) (Count II), the Illinois Wage Payment and Collection Act (IWPCA) (Count III), and in the alternative, unjust enrichment under the common law of contracts (Count IV). The defendants now move to dismiss all of the plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6),

arguing that they failed to state a claim upon which relief can be granted. (Dkt. 35.) For the reasons set forth below, the Court grants the defendants' motion (Dkt. 35) in part and denies it in part.

## BACKGROUND

The plaintiffs worked for the defendants as dancers at the Ocean Gentlemen's Club in Bedford Park, Illinois. (Dkt. 32 ¶ 44–64.) The Club provides adult entertainment, food, and alcoholic drinks to its customers. *Id.* ¶ 69. As dancers, the plaintiffs performed routines set to music streamed in the Club. *Id.* ¶ 72. The defendants posted videos of the dancers on websites and social media to further advertise the Club's business. *Id.* ¶ 71. The plaintiffs were also responsible for interacting with patrons and handling customers' tips. *Id.* ¶ 79.

Deborah Diaz and Seif El Sharif operate the Club. *Id.* ¶¶ 30–34. For instance, Diaz handles bookkeeping, while both Diaz and El Sharif manage the staff through the implementation of a set of rules and guidelines. *Id.* ¶¶ 32, 35–40. Diaz and El Sharif hired and fired dancers, determined their compensation policies, and set their work schedules. *Id.* ¶¶ 37–38, 41–42. Both Diaz and El Sharif were often present at the Club to supervise the employees. *Id.* ¶¶ 31, 34–36.

The defendants required dancers to work at least three nights a week. *Id.* ¶ 82. The shifts typically lasted seven to nine hours. *Id.* ¶ 85. In 2018, the defendants upped their mandatory minimum of three nights to four nights per week, and if a dancer wanted to work a weekend, she had to work at least one weekday first. *Id.* ¶¶ 83–84. Sometimes, the defendants made the plaintiffs work extra afternoon shifts

when the Club was short on dancers. *Id.* ¶ 86. On multiple occasions, each plaintiff worked over forty hours per week. *Id.* ¶¶ 87–103.

Although the plaintiffs often worked at least forty hours per week, the only compensation they received was tips from patrons of the club. *Id.* ¶ 81. The defendants did not pay any of their dancers, including the plaintiffs, wages or any form of compensation for their work at the club. *Id.* ¶ 104. The plaintiffs did not receive any overtime compensation either. *Id.* ¶ 105. The defendants often imposed fees and fines on the plaintiffs' tips. (Dkt. 32 ¶¶ 107–08.) The standard fees ranged from twenty to fifty dollars, and included payment to the: Club, management, house parent, disc jockey, and security/bouncers. *Id.* ¶ 107.

The defendants additionally fined the plaintiffs for not coming to work, for being late to the Club or the stage, and for missing mandatory meetings. *Id.* ¶ 108. These penalties ranged from fifty dollars to five hundred dollars. *Id.* For example, Shalayla Liddell worked on her birthday. *Id.* ¶ 99. When no customers showed up, she asked to leave, and the defendants consequently fined her $100 even though she did not receive any tips that night. *Id.* The plaintiffs allege that this compensation scheme violates federal and state minimum wage laws. *Id.* ¶¶ 111–12. They therefore sued the defendants in this Court. (Dkt. 32.)

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The Court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *See Twombly,* 550 U.S. at 556. But the Court need not accept as true legal conclusions because "[t]hreadbare recitals of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 129 S. Ct. at 1940.

## ANALYSIS

The plaintiffs demand relief for unpaid wages and withheld tips under the FLSA, the IMWL, the IWCPA, and the common law of contracts. The defendants moved to dismiss the plaintiffs' claims contending: (1) the plaintiffs failed to establish that the defendants are personally liable for the alleged misconduct as employers under the FLSA; (2) the defendants complied with their minimum and overtime wage obligations because what the plaintiffs call tips were actually service charges and thus counted as paid wages; (3) the IWPCA only covers wages owed to an employee under a written agreement with her; and (4) a claim for unjust enrichment is untenable when there is a written agreement in place. The Court takes each argument in turn.

## I. FLSA

Congress enacted the FLSA to provide "fair labor standards for employees, including those marginalized workers unable to exert sufficient leverage or bargaining

power to achieve adequate wages in the absence of statutory protections." *McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 247 (4th Cir. 2016). To recover for a violation of the FLSA, the plaintiffs must prove that: (1) the defendants employed them; (2) the defendants' business engaged in commerce; and (3) they did not receive minimum or overtime wages. 29 U.S.C. § 206(a); *see Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019). The defendants contest the first and third elements. They principally argue that they are not personally liable as employers under the Act. But they also contend that, even if they are statutory employers, they complied with their wage payment obligations.

### A. Employer (Personal Liability)

The FLSA levies personal liability against "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). As in the analogous context of the Family and Medical Leave Act, an "individual is subject to [FSLA] liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3rd Cir. 2014) (quoting *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir. 1987)).

Here, the plaintiffs plausibly alleged facts that permit the Court to reasonably infer that Diaz and El Sharif are personally liable for the unpaid wages. Both Diaz and El Sharif are owners and officers of CWS, LLC, doing business as Ocean's Gentlemen's Club. (Dkt. 32 ¶¶ 26–29.) Diaz and El Sharif personally operate the Club,

manage the staff, and determine compensation policies, work schedules, duties, and conditions applicable to all dancers at the club. (Dkt. 32 ¶¶ 35–38.) Both individuals enforced the rules and exercised the authority to hire and fire the dancers at the Ocean Gentlemen's Club. *Id.* ¶ 39–42.

While some allegations collectively refer to CSWS, Diaz, and El Sharif as 'Defendants,' there is still enough differentiation to give each individual defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see* Dkt. 32 ¶¶ 26–42 (distinguishing between Diaz and El Sharif). In sum, the plaintiffs provided enough information in their complaint about the scope of the defendants' workplace authority to permit the Court to reasonably infer that they are individually liable for the alleged misconduct.

### B.    Minimum Wage

The FLSA mandates a minimum wage and overtime pay for all covered employees. *See, e.g.*, *Lalic*, 2018 WL 5098983 *2. Those minimum wage obligations may be offset by service charges or tips, meaning the fact that the dancers received "tips" would theoretically reduce any compensation the defendants owed the plaintiffs. *See McFeeley*, 825 F.3d at 245–46. On the one hand, a service charge is a "compulsory charge for service . . . imposed on a customer by an employer's establishment." *Id.* (quoting 29 C.F.R. § 531.55(a)). On the other hand, a tip is a "sum presented by a customer as a gift or gratuity in recognition of some service performed for him." *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177 (7th Cir. 1987). In other words, a service charge is required, and a tip is discretionary. *See, e.g.*, *Lalic v. CG*

*RYC, LLC*, 2018 WL 5098983, at *6 (S.D. Fla. Aug. 13, 2018), *report and recommendation adopted*, No. 18-20118-CIV, 2018 WL 5098883 (S.D. Fla. Aug. 29, 2018).

An employer with tipped employees may claim a tip credit to apply toward wage payments, but the employer still must pay tipped employees "the minimum wage set for those receiving tip income and to notify employees of the 'tip credit' provision." *McFeeley*, 825 F.3d at 246. For instance, where minimum wage is $7.25 an hour, an employer may pay less than that only if they are categorizing their employees as "'tipped employees" and their hourly tips, *in addition to the (credited) wages paid by their employer*, adds up to minimum wage. *See, e.g.*, *Lalic,* 2018 WL 5098983 at *3. Without any compensation or notice to the employees, an employer may not claim the "tip credit" to offset its minimum wage obligation. Even if the tips did amount to the hourly minimum wage that employers must pay their employees, an employer may not take a tip credit if the employee does not retain the tips. *See, e.g.*, *id*.

Here, the plaintiffs were not tipped employees, at least in the eyes of the FLSA, as they received no notice of a tip credit or any wages whatsoever beyond the tips from patrons. Moreover, the plaintiffs allege the defendants, not the plaintiffs, "illegally retained significant portions of the tips received by the dancers by requiring the dancers . . . to pay a variety of fees for every shift they worked and imposing fines . . ." (Dkt. 32 ¶ 106.) Taking these allegations as true, the defendants did not satisfy their wage payments through a tip offset.

Changing direction, service charges are a separate offset under the FLSA that may reduce an employer's minimum-wage liability. *See McFeeley*, 825 F.3d at 246 (internal citations omitted). By way of example, an employer might deduct a fixed 3% service charge from an employee's tips whenever a customer tips by credit card so that the employer can account for the handling fee the credit card company charges it. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 552 (6th Cir. 1999). To count service charges as an offset, however, the employer must include them in its gross receipts and distribute them to its employees. *See McFeeley*, 825 F.3d at 246 (citing in part 29 C.F.R. § 531.55(b)). "These requirements are necessary to ensure that employees actually received the service charges as part of their compensation as opposed to relying on the employer's assertion or say-so." *Id.*

In this case, the plaintiffs allege that the fees they received from patrons solely belonged to them. (Dkt. 32 ¶¶ 80–81). The plaintiffs also directly received the tips. *Id.* ¶ 199. Because none of these payments ever went directly to the Club's proprietors, the defendants could not have distributed any of those service charges to the dancers. *See McFeeley*, 825 F.3d at 246. What is more, even assuming these payments are service charges, whether the plaintiffs colloquially choose to call it a tip (and allege as much) is of no legal significance, especially at this stage of the proceedings. *See Mechmet v. Four Seasons Hotels*, Ltd., 825 F.2d 1173, 1177 (7th Cir. 1987) ("We attach no weight to the fact that the collective bargaining agreement between the Ritz-Carlton and its waiters describes the waiters' income from the service charge

as a 'gratuity' rather than as a 'commission.'"); *Lusk v. Serve U Brands, Inc.*, No. 6:17-CV-06451-MAT, 2018 WL 2979098, at *4 (W.D.N.Y. June 14, 2018).

The defendants argue that the pleaded term "tips" a conclusory allegation and distinct from a service charge. True, the tip versus service charge question is inherently fact-bound and thus inappropriate for resolution on a motion to dismiss. *See, e.g.*, *Lalic*, 2018 WL 5098983 at *6; *Garbacea v. CG Ryc, LLC*, No. 18-20126-CIV, 2018 WL 5098985, at *7 (S.D. Fla. Aug. 30, 2018), *report and recommendation adopted*, No. 1:18-CV-20126-UU, 2018 WL 5098884 (S.D. Fla. Sept. 14, 2018); *Cachola-Bonilla v. Wyndam el Conquistador Resort & Country Club*, 577 F. Supp. 2d 566, 574 (D. P.R. 2008) (granting in part and denying in part the defendant's motion for summary judgment and explaining that "whether the charge made to customers was a tip, not subject to the defendant's retention, or constituted a 'service charge' and in reality not a 'tip', cannot be disposed by the court on brevis disposition fashion as there are clearly issues of material facts in dispute"). Accordingly, the Court denies the defendants' motion to dismiss Counts I and II[1].

## II. IWPCA

The IWPCA narrowly construes "wages" as "compensation owed to an employee by an employer pursuant to an employment contract or agreement between the two parties." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016)

---

[1] The Illinois Minimum Wage Law is the state-level equivalent of the Federal Labor Standards Act. *See, e.g.*, *Labriola v. Clinton Entm't Mgmt., LLC*, No. 15 C 4123, 2017 WL 1150989, at *10 (N.D. Ill. Mar. 28, 2017) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 (7th Cir. 1993)). For the same reasons the Court is not dismissing the plaintiffs' FLSA claim, it is not dismissing their IMWL claim either.

(citing 820 ILCS 115/2). In *Enger*, the employment "agreement did not obligate defendants to compensate the drivers—it only required defendants to make their cabs and medallions available to the drivers so that they could collect tips and fares from the passengers." *Id.*

Like *Enger*, the agreement between the plaintiffs and the defendants in this case was for the dancers to keep the tips that they received from customers at the club; it did not require the defendants to pay the plaintiffs anything themselves. Because the IWCPA's definition of "wages" is not as broad as the IMWL's, "an employee suing under the IWPCA must seek to collect compensation owed by his employer, and not third parties." *Id.* The plaintiffs failed to allege that the defendants owed them wages (at least per the contract) when they merely agreed to keep the tips they received. The Court accordingly grants the defendants' motion to dismiss the IWPCA claim.

## III.    Unjust Enrichment

Finally, "when two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Id.* at 571 (citing *Utility Audit, Inc v. Horace Mann Serv. Corp.,* 383 F.3d 683, 688–89 (7th Cir. 2004)). In fact, when an unjust enrichment claim rests on the same improper conduct alleged in another claim, they will fall or stand together. *Id.* at 570 (citing *Cleary v. Philip Morris Inc.,* 656 F.3d 511, 517 (7th Cir. 2011)). Here, the plaintiffs' claim for unjust enrichment is untenable because the plaintiffs alleged that they and other class members signed a written agreement with the defendants that specified

that dancers were to keep the tips that they received from customers of the Club. Because this written contract between the plaintiffs and the defendants covers their business relationship, the unjust enrichment claim does not fall outside the contract. Therefore, the Court grants the defendants' motion to dismiss the plaintiffs' claim for unjust enrichment (Count IV).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the defendants' motion (Dkt. 35), dismissing the IWCPA (Count III) and unjust enrichment (Count IV) claims only. The plaintiffs may proceed into discovery on their FLSA and IMWL claims in Counts I and II.

Virginia M. Kendall
United States District Judge

Date: August 13, 2019