IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMISHA ROSEBAR *et al.*, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 18 C 7081 |
| v. | ) ) | Judge Virginia M. Kendall |
| CSWS, LLC d/b/a OCEAN'S GENTLEMEN'S CLUB, DEBORAH DIAZ, and SEIF EL SHARIF, | ) ) ) ) | |
| *Defendants*. | ) ) | |

**MEMORANUM OPINION AND ORDER**

On May 3, 2019, Plaintiffs Jamisha Rosebar, Breona Smith, Kenya Williams-Mix, Adrieana Powell, Shalayla Liddell, Jada Adams, Princess Wellington, and Laqueshia Miller, (together, "Plaintiffs"), individually and on behalf of all others similarly situated, filed a Consolidated Collective and Class Action Complaint against Defendants CSWS, LLC d/b/a Ocean's Gentlemen's Club, Deborah Diaz, and Seif El Sharif[1] seeking relief under the Fair Labor Standards Act (FLSA), the Illinois Minimum Wage Law (IMWL), the Illinois Wage Payment and Collection Act (IWPCA), and alternatively through common law unjust enrichment. (Dkt. 32.) The Court granted Defendants' motion to dismiss the IWPCA and unjust enrichment claims but allowed Plaintiffs to proceed with their claims under the FLSA and IMWL. (Dkt. 43.) Plaintiffs

---

[1] On October 10, 2019, Defendants notified the Court that Defendant Seif El Sharif died on or about September 25, 2019. As of the date of this Order, the Court has not received any motion under Fed. R. Civ. P. 25(a) to substitute El Sharif's estate as the proper defendant.

1

now move for conditional certification and authorization to facilitate notice under 29 U.S.C. § 216(b). (Dkt. 44.)

For the following reasons, the Court grants Plaintiffs' motion [Dkt. 44].

## BACKGROUND

The Court presumes familiarity with the background of this action as set forth in its August 13, 2019 Order and does not recite a detailed background here. The Court will, however, provide a factual background as it pertains to Plaintiffs' allegations that they and the other potential members are similarly situated.

Plaintiffs were employed as dancers at Defendants' gentleman's club in Bedford Park, Illinois (the "Club") (Dkt. 44 at 6.) Plaintiffs performed various dance routines, interacted with patrons, and handled customers' tips. (Dkt. 44-7 ¶ 4; Dkt. 44-8 ¶ 4; Dkt. 44-9 ¶ 4; Dkt. 44-10 ¶ 4; Dkt. 44-11 ¶ 4.) Dancers were required to work at least three days per week. (Dkt. 44-7 ¶ 14; Dkt. 44-8 ¶ 13; Dkt. 44-9 ¶ 14; Dkt. 44-10 ¶ 14; Dkt. 44-11 ¶ 14.) In 2018, Defendants raised the mandatory minimum days of work per week from three to four. (Dkt. 44-7 ¶ 15; Dkt. 44-8 ¶ 14; Dkt. 44-9 ¶ 15; Dkt. 44-10 ¶ 15; Dkt. 44-11 ¶ 15.) Shifts typically lasted for seven to nine hours. (Dkt. 44-7 ¶ 16; Dkt. 44-8 ¶ 15; Dkt. 44-9 ¶ 16; Dkt. 44-10 ¶ 16; Dkt. 44-11 ¶ 16.) Dancers were sometimes required to work double shifts. (Dkt. 44-7 ¶ 17; Dkt. 44-8 ¶ 16; Dkt. 44-9 ¶ 17; Dkt. 44-10 ¶ 17; Dkt. 44-11 ¶ 18.) While at work, dancers were required to be together most of the day, attend meetings together, and interact at the Club. (Dkt. 44-7 ¶ 10; Dkt. 44-8 ¶ 9; Dkt. 44-9 ¶ 10; Dkt. 44-10 ¶ 10; Dkt. 44-11 ¶ 10.) Defendants did not require dancers to possess any unique skills in order to work at the Club. (Dkt. 44-7 ¶ 20; Dkt. 44-8 ¶ 19; Dkt. 44-9 ¶ 25; Dkt. 44-10 ¶ 21; Dkt. 44-11 ¶ 20.)

Defendants required dancers to sign a form titled "Independent Contractor," which stated that dancers would be working "on an independent contractor basis" and "keep tips that [they] receive[d] from customers." (Dkt. 44-6.) Defendants did not pay dancers any wages or other forms of compensation for their work at the Club. (Dkt. 44-7 ¶ 6; Dkt. 44-8 ¶ 5; Dkt. 44-9 ¶ 6; Dkt. 44-10 ¶ 6; Dkt. 44-11 ¶ 6.) Dancers were compensated solely by way of tips (in cash or by credit card) from customers for their work at the Club. (Dkt. 44-7 ¶ 8; Dkt. 44-8 ¶ 7; Dkt. 44-9 ¶ 8; Dkt. 44-10 ¶ 8; Dkt. 44-11 ¶ 8.) Defendants did not provide dancers with any notice regarding the "tip credit" provisions of the FLSA. (Dkt. 44-7 ¶ 7; Dkt. 44-8 ¶ 6; Dkt. 44-9 ¶ 7; Dkt. 44-10 ¶ 7; Dkt. 44-11 ¶ 7.) Defendants required dancers to pay a variety of fees for each shift they worked at the Club and to pay fines for violations of the Club's rules. (Dkt. 44-7 ¶ 12-13, 23; Dkt. 44-8 ¶ 12-13, 22; Dkt. 44-9 ¶ 12-13, 28; Dkt. 44-10 ¶ 12-13, 24; Dkt. 44-11 ¶ 12-13, 23.) For example, Defendants required dancers to pay the Club a $50 House Fee/Rent Fee/Walking-in Fee, $20 to Club Management, $20 to the house parent, $20 to the disc jockey, and $35 to bouncers/security. (Dkt. 44-7 ¶ 24; Dkt. 44-8 ¶ 23; Dkt. 44-9 ¶ 29; Dkt. 44-10 ¶ 25; Dkt. 44-11 ¶ 24.) Defendants also fined dancers $50-$100 for being late to work, $100 for missing work, $20 for being late to the stage, and $500 for missing mandatory meetings. (Dkt. 44-7 ¶ 25; Dkt. 44-8 ¶ 24; Dkt. 44-9 ¶ 30; Dkt. 44-10 ¶ 26; Dkt. 44-11 ¶ 25.)

**LEGAL STANDARD**

Under the FLSA, covered employers must pay covered employees (a) at least a specified minimum hourly wage for all work performed and (b) one and one-half times the regular rate of pay for all hours worked over forty in one workweek. 29 U.S.C. §§ 206-207. "Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d

445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)); *see Schaefer v. Walker Bros. Enterprises*, 829 F.3d 551, 553 (7th Cir. 2016) ("Suits under the Fair Labor Standards Act cannot proceed as class actions. Instead they are opt-in representative actions."). District courts have broad discretion in managing collective actions under the FLSA. *Alvarez*, 605 F.3d at 449.

"The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). "Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process." *Nicks v. Koch Meat Co., Inc.*, 265 F. Supp. 3d 841, 848 (N.D. Ill. 2017) (citations omitted). This case is at the first step, the conditional certification stage. "The purpose of conditional certification is to determine the size and contour of the group of employees who may become collective members and whether these potential members are 'similarly situated.'" *Id.* (citing 7B Charles A. Wright et al., Federal Practice & Procedure § 1807); *see also Gomez v. PNC Bank, Nat'l Assoc.*, 306 F.R.D. 156, 173 (N.D. Ill. 2014); *Ervin*, 632 F.3d at 974 ("[t]he conditional approval process is [ ] used by district courts to establish whether potential plaintiffs . . . should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action.").

At this first stage, Plaintiffs bear the burden of demonstrating that other potential claimants are similarly situated by making a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Gomez*, 306 F.3d at 173. "Courts use a lenient interpretation of the term 'similarly situated' in deciding whether plaintiffs meet this burden." *Nicks*, 265 F. Supp. 3d at 849 (quotations and

citations omitted). To determine whether Plaintiffs have made the required modest factual showing, they "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). "Conditional certification is not, however, automatic and to proceed as a collective action, plaintiffs must 'demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the [FLSA] generally must be present.'" *Nicks*, 265 F. Supp. 3d at 849 (quoting *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 C 10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If plaintiffs are able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs. *Id.*

At this initial stage, "[t]he court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013); *see also Larsen v. Clearchoice Mobility, Inc.*, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. July 25, 2011) ("[T]he court does not resolve factual disputes or decide substantive issues going to the merits."); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 751 (N.D. Ill. 2011) ("[T]he court does not consider the merits of a plaintiff's claims, or witness credibility").

**DISCUSSION**

Plaintiffs have made the "modest factual showing" necessary to establish that they and other potential plaintiffs are similarly situated for conditional approval purposes. Plaintiffs and members of the proposed collective all worked at a single location owned and operated by Defendants. Their declarations establish that they and the proposed members performed the same job duties and were subjected to the same working conditions and compensation structure. "If these class members are not similarly situated, it is hard to imagine that a class could ever be conditionally certified, which may also explain why classes were conditionally certified in twenty-five of the twenty-seven cases [involving exotic dancers] cited, *supra*." *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 781-82 (C.D. Ill. 2015) (citing dozens of cases conditionally certifying collectives of exotic dancers making similar FLSA claims against the owners of their establishments). Defendants argue, relying primarily on a single case from the Eastern District of Wisconsin, that Plaintiffs have failed to show they are similarly situated for purposes of conditional certification. In that case, a potential collective of dancers moved for conditional certification, bringing claims similar to the Plaintiffs' claims in this case. *See Pecor v. N. Point EDC Inc.*, No. 16 C 1263, 2017 WL 3723600, at *3-4 (E.D. Wisc. June 9, 2017). In *Pecor*, however, the record reflected that "each dancer [] sign[ed] a different agreement for fees for their performances, usually based on experience, nature of their performance, or individually negotiated daily bonus rates" and "some dancers receive an appearance bonus based on their popularity." *Id.* None of those types of pay disparities are present in this case, at least based on the record currently before the Court. The defendants in *Pecor* submitted oppositional affidavits rebutting much of the plaintiffs' offered evidence, which the court considered. Again, no such disputes exist here. Plaintiffs need only clear a low bar at the conditional certification stage, and they have done more than enough here.

Turning to the issue of notice, Defendants also object to Plaintiffs' proposal to distribute notice to potential members via text message. According to Defendants, Plaintiffs have failed to show that U.S. mail and email notice are insufficient and that potential members are transitory, and they further argue that receiving a text message from a former employer would be "unnecessary and overly intrusive." The Court disagrees. Plaintiffs argue in their motion that Defendants communicate with dancers almost exclusively via text message and typically keep records that include only dancers' first names or stage names. (Dkt. 52 at 7-8.) Plaintiffs also point out that dancers often preserve their anonymity by withholding their addresses, personal email addresses, and real names from employers. *Id.* Common sense dictates that the transitory nature of dancing jobs makes notice via text message entirely appropriate. *See, e.g.*, *Brashier v. Quincy Prop., LLC*, No. 17 C 3022, 2018 WL 1934069, at *6-7 (C.D. Ill. April 24, 2018) (text-message notice is appropriate if workforce is transitory); *Desio v. Russell Road Food & Beverage, LLC*, No. 15 C 1440, 2017 WL 4349220, at *5 (D. Nev. Sept. 29, 2017) (finding text-message notice appropriate due to the transient nature of dancing jobs); *Bhumithanarn v 22 Noodle Mkt. Corp.*, No. 14 C 2625, 2015 WL 4240985, at *5 (S.D. N.Y. July 13, 2015) (finding that text-message notice was "likely to be a viable and efficient means of communicating with many prospective members of this collective action" given the "high turnover characteristic of the restaurant industry").

## CONCLUSION

Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs Pursuant to 29 U.S.C. § 216(b) [Dkt. 44] is granted. This action is conditionally certified as an FLSA Collective action on behalf of the following putative members of the Collective:

**All current and former dancers/entertainers who worked or have worked at Ocean Gentlemen's Club in Bedford Park, Illinois at any time from October 22, 2015 to the Present.**

Defendants are directed to identify all putative members of the proposed Collective by providing their names, last known addresses, email addresses, telephone numbers (including mobile), dates of birth and dates of employment, in an electronic and importable format such as an unrestricted Excel spreadsheet within 14 days of the entry of this Order.

The Court approves Plaintiffs' proposed "Notice of Right to Join Lawsuit" and "Consent to Join Lawsuit" form (Dkt. 44-2) and Plaintiffs' proposed language for notice via text message (Dkt. 44-3) to be sent to the putative Collective members.

Plaintiffs' Counsel are authorized to disseminate the approved notice documents and language to the putative members of the Collective via U.S. mail, e-mail, and text message, and to send a reminder notice by the same methods halfway through the notice period.

The putative members of the Collective are allowed 60 days from the date the notice is mailed to join this case by returning their written consent forms if they so choose.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: January 3, 2020